UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
LIGHTING & SUPPLIES, INC.,                                   :
                                                             :
                        Plaintiff,                           :
                                                             :     **REPORT AND RECOMMENDATION**
               -against-                                     :
                                                             :     20 Civ. 2790 (FB) (VMS)
NEW SUNSHINE ENERGY SOLUTIONS INC.,                          :
NEW SUNSHINE MANUFACTURING CO.,                              :
LTD., SHENZHEN ZHAOPENG                                      :
TECHNOLOGY CO. LTD., DONGGUAN                                :
ZHAOPENG LIGHTING TECHNOLOGY CO.                             :
LTD., and NEW SUNSHINE LIGHTING, INC.,                       :
                                                             :
                        Defendants.                          :
------------------------------------------------------------ x

**Vera M. Scanlon, United States Magistrate Judge:**

      Plaintiff Lighting & Supplies, Inc. ("Plaintiff") brought this action against Defendants New Sunshine Energy Solutions Inc. ("NSES"); New Sunshine Manufacturing Co., Ltd. ("NSMC"); Shenzhen Zhaopeng Technology Co. Ltd. ("SZT"); Dongguan Zhaopeng Lighting Technology Co. Ltd. ("DZLT"); and New Sunshine Lighting, Inc. ("NSL") (collectively, "Defendants"), alleging trademark infringement pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and supplemental claims under New York law. See ECF No. 1. Defendants defaulted, and Plaintiff moved for a default judgment. See ECF No. 16. By a report and recommendation issued on February 10, 2022, this Court recommended that the District Court grant Plaintiff's motion for default judgment on liability with respect to Count I, Count III and Count V, to the extent liability for Count V is premised on New York common law unfair competition only. The Court recommended denying without prejudice Plaintiff's motion for default judgment on liability with respect to Count II, Count IV and the claim for deceptive

1

trade practices under N.Y. Gen. Bus. Law § 349 as part of Count V.  This Court also recommended that the Court deny without prejudice Plaintiff's request for injunctive relief.  The Court recommended that, if Plaintiff did not amend the complaint, Plaintiff be granted leave to renew its motion for default judgment as to the claims for which judgment was denied; to make a motion for damages, attorneys' fees and costs; and/or to make a motion for injunctive relief.  ECF No. 18 at 19.  Plaintiff did not object to the report and recommendation at ECF No. 18, and the District Court adopted the report and recommendation at ECF No. 21.  Plaintiff did not amend the complaint, but instead filed the present motion for damages at ECF No. 28, which the District Court referred to the undersigned.

In the present motion, Plaintiff seeks against two Defendants, NSL and NSES (the "California Defendants"), an award of statutory damages of $50,000 per infringed mark, attorneys' fees and costs.[1]  ECF No. 28.

For the reasons stated herein, the Court respectfully recommends that Plaintiff's motion be granted in part and denied in part.

## I. BACKGROUND

Familiarity with the report and recommendation at ECF No. 18 is presumed, so the Court will not recount the allegations in detail.

In brief, Plaintiff manufactures and distributes various lighting and electrical products, including incandescent, fluorescent, LED and halogen bulbs and lamps under the names

---

[1] Plaintiff does not seek a judgment against the other Defendants, New Sunshine Manufacturing Co., Ltd., Shenzhen Zhaopeng Technology Co., Ltd. and Dongguan Zhaopeng Lighting Technology Co., Ltd.  ECF No. 28.  As Plaintiff did not timely file a motion for damages against these Defendants, Plaintiff has waived any claim for damages against these Defendants.  The Court respectfully recommends that they be dismissed from this action without an award of damages.  Plaintiff also has not renewed its request for injunctive relief.

2

SUNSHINE, SUNLITE and SUN-LITE. Complaint, ECF No. 1 ¶ 11. Plaintiff is the owner of the following valid and subsisting United States Registration Numbers on the Principal Register in the United States Patent and Trademark Office ("USPTO") for the trademarks SUNSHINE LIGHTING, Registration No. 3118583 (the "SUNSHINE Mark"); SUNLITE, Registration Nos. 4954218, 3614795, and 2627184 (collectively, the "SUNLITE Marks"); and SUN-LITE, Registration No. 4748580 (the "SUN-LITE Mark") (the SUNSHINE Mark, SUNLITE Marks and SUN-LITE Mark are collectively referred to as the "LSI Marks"). Id. ¶ 13; see id. Ex. A. Plaintiff, on its own and through licensees and authorized distributors, distributes and sells electrical and lighting products under the LSI Marks in wholesale and retail outlets, including home improvement stores and specialty stores targeting the general public, lighting specialists and contractors, as well as online through various e-commerce sites. Id. ¶ 17. As a result of Plaintiff's expenditures and efforts, the LSI Marks have come to signify high quality in electrical and lighting products, and they have acquired reputation and goodwill belonging exclusively to Plaintiff. Id. ¶ 18. Plaintiff's LSI Marks are distinctive to both the consuming public and Plaintiff's trade, id. ¶ 19, and Plaintiff has aggressively and successfully enforced and protected its LSI Marks against infringers, id. ¶ 20.

Defendants are engaged in selling lighting products, including various electrical light bulbs. Id. ¶ 21. Without Plaintiff's authorization, beginning after Plaintiff acquired rights in the LSI Marks, Defendants adopted and began using the tradenames "New Sunshine Lighting" and "New Sunshine" (collectively, the "Infringing Marks"), under which they sell and distribute lighting supplies. Id. ¶ 22. Defendants' products are in direct competition with Plaintiff, thereby causing a likelihood of confusion among customers in the same channels of trade and leading to a false implication of a business relationship between Plaintiff and Defendants. Id. As such,

3

purchasers are likely to purchase Defendants' goods bearing the Infringing Marks on the belief that they are Plaintiff's, resulting in a loss of sales to Plaintiff.  Id. ¶ 23.

Defendants have been engaged in the manufacture, distribution, advertising, promotion, offering for sale and sale of lighting and electrical products using the Infringing Marks throughout the United States.  Id. ¶ 24; see id. Ex. B.  The lighting and electrical products Defendants have manufactured, distributed, advertised, promoted, offered for sale and sold under the Infringing Marks are identical in nature to the LSI Marks, in competitive proximity to the LSI Marks, and within the same channels of trade as the LSI Marks, such as retail e-commerce platforms.  Id. ¶ 25.  Defendants offer and sell their lighting and electrical products to lay consumers, as well as lighting and electrical professionals, under the Infringing Marks, identical to the consumers of the LSI Marks.  Id. ¶ 26.  Defendants should have known of the existence of the LSI Marks.  Id. ¶ 34.

On April 22, 2020, Plaintiff's counsel sent a cease-and-desist letter to Defendants, objecting to Defendants' use of the Infringing Marks.  Id. ¶ 27.  As of the date of the Complaint, Plaintiff's counsel had not received a response from Defendants.  Id.  Defendants' continued infringing acts have caused confusion, mistake and deception among the relevant consuming public as to the source or origin of Defendants' electrical and lighting products and are likely to deceive the relevant consuming public into believing that Defendants' electrical and lighting products originate from, are associated or affiliated with, or are otherwise authorized by Plaintiff. Id. ¶ 28.  Upon information and belief, Defendants' acts are willful, with the deliberate intent to trade on the goodwill of the LSI Marks, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's electrical and lighting products to Defendants.  Id. ¶ 30.

Defendants' acts cause damage and harm to Plaintiff and to Plaintiff's valuable reputation and goodwill. Id. ¶ 31.

## II. DISCUSSION

### a. Legal Standard

As discussed in the Court's prior report and recommendation in detail, Rule 55 of the Federal Rules of Civil Procedure establishes a two-step procedure by which a party may obtain a default judgment, which has been satisfied in this matter, as determined by the District Court. First, if a party has failed to plead or otherwise defend against an action, the Clerk of Court must enter a certificate of default by making a notation on the record. See Fed. R. Civ. P. 55(a). Second, after this entry of default, if the defaulting party still fails to appear or move to set aside the default, the court may enter a default judgment if the complaint is well-pleaded. See Fed. R. Civ. P. 55(b). Entry of a default judgment constitutes an admission of all well-pleaded allegations, except those pertaining to the amount of damages. See Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). By adopting the report and recommendation, the District Court found liability on Defendants' part in favor of Plaintiff as to Count I, Count III and Count V, to the extent liability for Count V is premised on New York common law unfair competition only. As to Counts I and III, Defendants are liable for trademark infringement, 15 U.S.C. § 1114(1)(a), and false designation of 15 U.S.C. § 1125(a)(1).

The Court also granted Plaintiff a liability judgment on its New York common law unfair-competition claim, the standards for which under New York law are the same as those governing trademark infringement claims under the Lanham Act, "except the common law [unfair-competition claim] requires a showing of bad faith or intent." Turn On Prods., Inc. v. Almost Famous Apparel, LLC, No. 18 Civ. 625 (ILG) (RER), 2019 WL 2436297, at *3

(E.D.N.Y. Apr. 12, 2019), report & recommendation withdrawn due to settlement, 5/6/2019 Order (quoting Fed. Exp. Corp. v. JetEx Mgmt. Servs., Inc., No. 13 Civ. 4431 (CBA) (RER), 2014 WL 4628910, at *3 (E.D.N.Y. May 8, 2014), report & recommendation adopted, 2014 WL 4628983 (E.D.N.Y. Sept. 15, 2014)) (further citations omitted).

### b. Statutory Damages

In the previous decision on Plaintiff's request for a default judgment, the Court left open the question of damages, including attorneys' fees. In the renewed motion for damages, Plaintiff exercises its right to elect to receive statutory damages under the Lanham Act, 15 U.S.C. Sec. 1117(c), in the amount of $50,000 for the violation of each of its five marks, which California Defendants have violated.

In brief, if the complaint suffices to establish liability, the court is left to conduct an inquiry to establish damages to a "reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). Under Credit Lyonnais, the court must first determine the appropriate approach to calculating damages, and then evaluate the plaintiff's evidence under the rule. 183 F.3d at 155. "[A]lthough the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989). The evidence a movant must provide as to damages is evidence that "the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1992) (citation omitted).

As Plaintiff argues, under the Lanham Act, "at any time before final judgment is rendered," a trademark owner may elect to recover an award of statutory damages, rather than actual damages, from the infringer. 15 U.S.C. §§ 1117(c), (d). For the use of a counterfeit mark, a court may award statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," or, if the use of the counterfeit mark is found to be willful, up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). Although this provision instructs courts to award a "just" amount and establishes a cap on the award, it "does not provide guidelines for courts to use in determining an appropriate award, as it is only limited by what the court considers just." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (internal citation & quotation marks omitted). Within these bounds, courts have broad discretion to issue an appropriate award. See Louis Vuitton Malletier v. Artex Creative Int'l Corp., 687 F. Supp. 2d 347, 355 (S.D.N.Y. 2010). For guidance, courts look to an analogous provision in the Copyright Act, 17 U.S.C. § 504(c), and have considered the following factors in setting statutory damage awards under the Lanham Act:

(1) "the expenses saved and the profits reaped";
(2) "the revenues lost by the plaintiff";
(3) "the value of the copyright";
(4) "the deterrent effect on others besides the defendant";
(5) "whether the defendant's conduct was innocent or willful";
(6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced"; and
(7) "the potential for discouraging the defendant."

Philip Morris USA Inc. v. A & V Minimarket, Inc., 592 F. Supp. 2d 669, 673 (S.D.N.Y. 2009) (citations & internal quotation marks omitted).

Plaintiff seeks $50,000 in statutory damages for each mark violated.² ECF No. 28-4 at 7. The first and second factors—that is, the expenses saved and the profits reaped by defendants as a result of their infringement, and the revenues lost by plaintiffs—cannot be calculated on this record. The Court resolves any uncertainty in favor of Plaintiff, as it should not be deprived of the right to recover statutory damages because these figures cannot be calculated without discovery from the non-appearing California Defendants. See Sara Lee Corp. v. Bags of New York, 36 F. Supp. 2d 161, 169 (S.D.N.Y. 1999) ("The Second Circuit instructs that in determining infringement damages, courts are to resolve against the defendants any factual uncertainties, such as whether any portion of the defendants' revenue may be deducted from damages, when the defendants left the uncertainty by not responding to the evidence of counterfeit sales with evidence of their own."). As to the third factor, Plaintiff does not offer a monetary value for its marks. The Court cannot reasonably infer much about the value of the marks. A failure to provide evidence of the value of the allegedly infringed mark is a factor courts have considering in declining to award large damages awards. See, e.g., Mattel, Inc. v. www.power-wheels-outlet.com, No. 21 Civ. 8108 (PAE) (GWG), 2022 WL 2900763, at *5 (S.D.N.Y. July 22, 2022), report & recommendation adopted, 2022 WL 3159317 (S.D.N.Y. Aug. 8, 2022) (awarding $125,000 per infringed mark). "[T]he persistence of the counterfeiting of . . . marks regardless of legal obstacles is itself a testimonial to their value." Polo Ralph Lauren, L.P. v. 3M Trading Co., No. 97 Civ. 4824 (JSM) (MH), 1999 WL 33740332, at *6 (S.D.N.Y. Apr. 19, 1999). Plaintiff's failure to put a value forth as to its marks suggests that the Court should find this factor to minimally favor Plaintiff. See, e.g., Fla. State Univ. v. Individuals Identified

---

² Plaintiffs do not seek additional damages for the additional claims that were sustained in the liability report and recommendation.

on Schedule A, No. 21 Civ. 10631 (VM), 2022 WL 9481947, at *3 (S.D.N.Y. Oct. 14, 2022) (awarding $50,000 per defaulting defendant for marks as to which plaintiff did not provide a specific monetary value for its marks).

As to the fourth and seventh factors, that is, deterring the conduct of the defaulting defendants and others, both weigh in Plaintiff's favor. See Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc., No. 14 Civ. 6911 (VEC) (JLC), 2016 WL 658310, at *5 (S.D.N.Y. Feb. 17, 2016) ("The need to deter other counterfeiters is particularly compelling given the apparent extent of counterfeit activity."), report & recommendation adopted, 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016). California Defendants' willful misconduct and failure to participate in this action support a finding that "a slight damage award is unlikely to deter them from continuing their illegal business." Louis Vuitton Malletier, S.A. v. LY USA, No. 06 Civ. 13463 (AKH), 2008 WL 5637161, at *2 (S.D.N.Y. Oct. 3, 2008) (citations omitted). The remaining factors similarly fall in Plaintiff's favor. The fifth factor, California Defendants' willfulness, is properly alleged in Plaintiff's complaint. As to the sixth factor, California Defendants have failed to participate in this litigation, and have by their inaction deprived Plaintiff of any records from which to assess the value of the infringing materials.

The requested statutory damage award of $50,000 per mark is reasonable in light of the assessment above, and in light of the fact that this amount is well below the maximum award of two million dollars that could be assessed against each Defendant for their willful violations of the trademark laws. Courts have awarded $50,000 in statutory damages on a per defendant basis. See Tangle, Inc. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified On Schedule A Hereto, No. 21 Civ. 9352 (LGS) (RWL), 2022 WL 2442302, at *1 (S.D.N.Y. June 29, 2022), report & recommendation adopted in part due to

9

partial satisfaction of proposed judgment, No. 21 Civ. 9352 (LGS), 2022 WL 3098306 (S.D.N.Y. Aug. 4, 2022); Kelly Toys Holdings, LLC v. alialialiLL Store, 606 F. Supp. 3d 32, 55 (S.D.N.Y. 2022) (collecting cases with awards of $50,000 in statutory damages for trademark infringement per defendant); Spin Master Ltd. v. Alan Yuan's Store, 325 F. Supp. 3d 413, 425 (S.D.N.Y. 2018) (awarding $50,000 in statutory damages per defendant). Courts have also granted awards in the range of $50,000 for each infringed mark. See Northern Innovations Holding Corp. v. The Keto Plan LLC, 21 Civ. 02172, 2022 WL 999150, at *4 (N.D. Ohio Apr. 4, 2022) (awarding statutory damages of $50,000 per mark infringed); Mattel, 2022 WL 2900763, at *5 (awarding $125,000 per infringed mark, but noting cases of lower awards per mark); see also JUUL Labs, Inc. v. GTB Fuel 2 Corp., No. 20 Civ. 1453 (GLS) (DJS), 2022 WL 2791204, at *4 (N.D.N.Y. June 28, 2022), report & recommendation adopted, 2022 WL 2789247 (N.D.N.Y. July 15, 2022) (awarding $20,000 per infringed mark, but collecting cases with awards in the range of $50,000); JUUL Labs, Inc. v. Smoke Depot of Liu Inc., No. 20 Civ. 9735 (NSR), 2022 WL 4129437, at *3 (S.D.N.Y. Sept. 12, 2022) (same). In cases with statutory damages requests, a $50,000 award per infringement falls "on the lower end of the spectrum of potential damages, even without a showing of willfulness." Northern Innovations Holding Corp., 2022 WL 999150, at *4.

    c. **Attorneys' Fees**

Plaintiff requests attorneys' fees and costs in the amount of $53,291.50. ECF Nos. 28-1; 28-3. In order to justify an award of attorneys' fees under the Lanham Act,[3] the prevailing party must show that the case is an "exceptional" one. See 15 U.S.C. § 1117(a); Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo, 791 F. App'x 284, 285 (2d Cir. 2020).

---

[3] Plaintiff does not offer a different statutory basis upon which to base its attorneys' fee request.

Until recently, "the Second Circuit viewed all cases involving willful infringement as exceptional ones warranting the award of attorneys' fees." Travel Leaders Grp. v. Corley, No. 19 Civ. 1595 (GBD) (JLC), 2019 WL 6647319, at *13 (S.D.N.Y. Dec. 5, 2019), report & recommendation adopted, 2022 WL 950957 (S.D.N.Y. Mar. 30, 2022); see, e.g., Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995) (now abrogated) ("The finding of willfulness determines the right to attorneys' fees"); Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 221 (2d Cir. 2003) (now abrogated) ("'exceptional cases' include 'instances of fraud or bad faith or willful infringement'" (citations omitted)).

In 2014, in Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 548 (2014), the Supreme Court interpreted an attorneys' fee provision of the Patent Act, which is identical to the Lanham Act's attorney's fee provision, and which similarly limits attorneys' fee awards to "exceptional" cases. The Supreme Court held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Id. In Sleepy's LLC v. Select Comfort Wholesale Corp., 909 F.3d 519, 531 (2d Cir. 2018), the Second Circuit applied this holding from Octane Fitness to the Lanham Act's attorneys' fee provision, stating that "[w]e now join [other federal circuits], concluding that under the Lanham Act, an exceptional case is one that stands out from others in the manner articulated by Octane Fitness . . . ."

In 4 Pillar Dynasty LLC v. New York & Company, Inc., 933 F.3d 202, 215 (2d Cir. 2019), the Second Circuit further clarified that, under Octane Fitness, as applied to the Lanham Act, a finding of willfulness is no longer sufficient to render a case "exceptional". The 4 Pillar Court abrogated Bambu Sales and Patsy's Brand, and it stated that, when analyzing attorney's

11

fees in a trademark case under Octane Fitness, there is "no presumption—rebuttable or otherwise—that cases involving willful infringement are necessarily 'exceptional.'" 4 Pillar, 933 F.3d at 216. The district court in 4 Pillar had determined that the defendants willfully infringed the plaintiffs' trademark, and, in turn, had deemed the case "exceptional" under the standard that "[t]he finding of willfulness determines the right to attorneys' fees." Id. at 215 (quoting Bambu Sales, 58 F.3d at 854). Although the 4 Pillar Court declined to disturb the district court's finding of willful infringement, it held that the district court's reasoning was not based on the current standard, and remanded the attorneys' fees question for analysis under the Octane Fitness standard. Id. at 211, 216.

After 4 Pillar, a finding of willful trademark infringement does not automatically entitle a plaintiff to attorneys' fees; instead, "[d]istrict courts may determine whether a trademark infringement case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Octane Fitness, 572 U.S. at 554; 4 Pillar, 933 F.3d at 216. Under the clarified standard, "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." Octane Fitness, 572 U.S. at 555 (emphasis added). In the "case-by-case exercise," courts may consider factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." 4 Pillar, 933 F.3d at 215 (quoting Octane Fitness, 572 U.S. at 554 n.6).

Where a willfulness finding is based on a defendant's default, the same principle holds: attorneys' fees are not warranted unless additional aggravating factors render the case exceptional. "Although the Second Circuit has not specifically addressed whether a defendant's

12

default is considered 'unreasonable' conduct under Octane Fitness," courts in this Circuit have held that "a [d]efendant's default—standing alone—is not 'exceptional.'" Antetokounmpo v. Costantino, No. 21 Civ. 2198 (JMF) (JLC), 2021 WL 5916512, at *7 (S.D.N.Y. Dec. 15, 2021) (collecting cases) (internal quotation marks omitted), report & recommendation adopted, 2022 WL 36232 (S.D.N.Y. Jan. 4, 2022); see Experience Hendrix, L.L.C. v. Pitsicalis, No. 17 Civ. 1927 (PAE) (GWG), 2020 WL 3564485, at *15 (S.D.N.Y. July 1, 2020), report & recommendation adopted sub nom., Experience Hendrix, LLC v. Hendrix, No. 17 Civ. 1927 (PAE) (GWG), 2020 WL 4261818 (S.D.N.Y. July 24, 2020) ("[M]erely defaulting is insufficient to make a case exceptional . . . ."). As one court noted, "Failing to answer a complaint does not constitute unreasonable litigation conduct; it is simply the absence of litigation conduct. Indeed, a default is a boon to the plaintiff, relieving it of the need to prove liability for the claims alleged in the complaint." Vivint, Inc. v. Christensen, No. 218 Civ. 313 (JNP) (PMW), 2019 WL 131857, at *3 (D. Utah Jan. 8, 2019)).

Whether willful infringement is determined upon a defendant's default or comes at some other stage of the litigation, attorneys' fees are not warranted if the totality of the circumstances analysis does not weigh in favor of exceptionality. In Graduation Sols., LLC v. Acadima, LLC, No. 3:17 Civ. 1342 (VLB), 2020 WL 1528082, at *2 (D. Conn. Mar. 30, 2020), for example, a jury found that the defendant "acted with reckless indifference to [the plaintiff's] rights or intentionally or wantonly violated [the plaintiff's] rights." The court, applying Octane Fitness and 4 Pillar, declined to award attorneys' fees under the Lanham Act, stating that

> the question of whether the jury found Defendant's infringement willful is distinct from the question of whether Defendant's litigation position was unreasonable, frivolous, or in bad faith, and does not by itself demonstrate an exceptional need for compensation and deterrence, especially where, as here, the jury awarded Plaintiff over a million dollars in compensatory damages and over a million dollars in punitive damages.

13

Graduation Sols., 2020 WL 1528082, at *2. The court rejected the plaintiff's reliance on a distinguishable case where fees were awarded "on the basis that it had sanctioned the defendant for contempt." Id. (citing Lavatec Laundry Tech, GmbH v. Voss Laundry Solutions, No. 3:13 Civ. 56 (SRU), 2018 WL 2426655, at *14 (D. Conn. Jan. 9, 2018)); see Esposito v. Info. Tech. Corp. of Tri-States, No. 19 Civ. 2025 (VB), 2022 WL 17095252, at *3 (S.D.N.Y. Nov. 21, 2022), appeal filed, No. 22-3187 (Dec. 20, 2022) (declining to award fees after jury found the defendant willfully infringed the Anticybersquatting Consumer Protection Act (passed as an addition to the Lanham Act) because "neither side litigated the case in an unreasonable manner," and the "strength of plaintiffs' case was not so great that defendants' decision to litigate through trial supports a finding of exceptionality").

It would therefore be incorrect under the current standard to award attorneys' fees to a plaintiff who alleges willful trademark infringement and obtains a default judgment, unless additional aggravating factors are present. The alternative would make little sense, and would be overly favorable to such a plaintiff. In addition to having had its allegations deemed admitted and avoiding the expense and risk of litigation, a plaintiff who obtained a default judgment would receive an even more favorable outcome than had it prevailed after the defendant appeared and proceeded normally through trial (in which case no fees would be awarded to the prevailing plaintiff absent aggravating factors). Such a blanket approach in default cases would not comport with the Lanham Act and the Supreme Court's prohibition of fees outside of "exceptional" and "rare" cases. See Octane Fitness, 572 U.S. at 555.

In the years since the Second Circuit's 4 Pillar decision, several courts in this Circuit have concluded that fees are not warranted in the circumstances similar to those present here. See, e.g., Campbell v. Huertas, No. 20 Civ. 3471 (KAM), 2023 WL 1967512, at *9 (E.D.N.Y.

14

Feb. 13, 2023) (granting a default judgment and finding willful trademark infringement liability, but declining to award attorneys' fees because the totality of the circumstances did not render the case exceptional); Luxottica Grp. S.p.A. v. Wafa Ali, Inc., No. 19 Civ. 6582 (FPG), 2021 WL 2525098, at *7 (W.D.N.Y. June 21, 2021) (finding that, by virtue of defendants' default, they "are deemed to be willful infringers," but declining to award fees because, "[a]side from the [defendants'] default, which standing alone is insufficient to demonstrate the exceptionality of these circumstances, the [plaintiffs] have failed to demonstrate that the defendants' conduct was exceptional"); Aime Leon Dore, Inc. v. TASTR. GmbH, No. 20 Civ. 934 (MKB), 2021 WL 6797294, at *15 (E.D.N.Y. Jan. 8, 2021) (awarding treble damages based on defendant's willful infringement and willful default, but denying fee application without prejudice where plaintiff failed to show its entitlement to fees under the Octane Fitness standard); Travel Leaders Grp., 2019 WL 6647319, at *15 (finding willful infringement by defaulting defendant but deeming case not exceptional where "defaulting defendants could not have litigated unreasonably because they did not litigate at all"). Courts also have not awarded fees where a plaintiff's costs are incurred in part because of how a plaintiff's attorney litigated the case. See Campbell, 2023 WL 1967512, at *9 (default case deemed not exceptional "where [p]laintiff's counsel did not expend time and effort litigating the case and did not perfect the default motion until the third attempt").

In recent default cases in which courts awarded attorneys' fees based on a finding that the cases were "exceptional," the plaintiffs demonstrated additional aggravating factors beyond the defendants' willfulness, such as a defendant litigating a case in an unreasonable way or in bad faith. See, e.g., Antetokounmpo, 2021 WL 5916512, at *8 (S.D.N.Y. Dec. 15, 2021) (awarding fees in light of, inter alia, the strength of the plaintiff's position and the defendant's "objectively unreasonable conduct"); Experience Hendrix, 2020 WL 3564485, at *16 (finding case

15

exceptional based on, inter alia, "defaulting defendants' behavior during litigation, including disobeying court orders and refusing to participate in discovery"); Streamlight, Inc. v. Gindi, No. 18 Civ. 987 (NG), 2019 WL 6733022, at *17 (E.D.N.Y. Oct. 1, 2019), report & recommendation adopted, No. 18 Civ. 987 (NG) (RLM), 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019) (case deemed exceptional where plaintiff demonstrated that its litigating position was "extremely strong," and defendants' use of plaintiff's marks was "extensive"). For example, in Aquavit Pharmaceuticals, Inc. v. U-Bio Med, Inc., No. 19 Civ. 3351 (VEC) (RWL), 2023 WL 2396511, at *20 (S.D.N.Y. Feb. 17, 2023) (report & recommendation pending), the court found the case to be exceptional where the defendants maliciously and repeatedly violated court orders imposing prohibitions on use of the plaintiff's marks and repeatedly failed to cure their contempt, all of which developed over several years. No such conduct is present in this case.

Plaintiff's memorandum of law does not discuss the above legal standards, or even argue that the case is "exceptional" under the Lanham Act. See ECF No. 28-4 at 6-7. This is noteworthy because the Court's report and recommendation, dated February 10, 2022, set forth the standards for entitlement to attorneys' fees under the Lanham Act and noted that "[a]dditional legal briefing and then an inquest hearing or a sufficient factual submission would be necessary to determine the amount of damages, attorneys' fees and costs that Plaintiff is due, if any." ECF No. 18 at 15-18. Notwithstanding Plaintiff's notice of these factors, it has not briefed the issues. This failure is a sufficient ground upon which to deny the fees request because there is no evidence or argument proffered as to why this case should be considered to be exceptional.

Even assuming Plaintiff had proffered such an argument, the Court respectfully recommends that this case not be deemed exceptional under the Lanham Act. As this Court

16

noted in its report and recommendation, dated February 10, 2022, by defaulting, Defendants have admitted "bad faith by continuing to engage in infringing conduct after receiving a demand to stop engaging in such conduct." ECF No. 18 at 2. California Defendants' default and admitted bad faith are insufficient to demonstrate that the case is exceptional. See 4 Pillar Dynasty, 933 F.3d at 216; Antetokounmpo, 2021 WL 5916512, at *7. Here, Plaintiff had limited success on its initial motion for default judgment, and it declined to amend the complaint. ECF Nos. 18 and 21. It is only moving for the present relief against two California Defendants, not all Defendants, and only on one of the successful claims. Although Plaintiff's proposed attorneys' fee bill is quite high, it did not arise from any litigation conduct by any Defendant, but, rather, largely because of choices made by Plaintiff's counsel in the litigation. See, e.g., Order at 10/23/20 (alternative publication order for defendants other than the California Defendants); ECF No. 18 (report and recommendation granting partial relief on liability).

Considering the totality of circumstances, this case strikes the Court as an ordinary trademark infringement case, and not the kind of "exceptional" case contemplated in the Lanham Act and Supreme Court precedent. Although California Defendants "frustrated the litigation process by not answering the Complaint or otherwise appearing in or defending the action at all," California Defendants' default meant that Plaintiff did not incur the expense and risks of litigation. See Campbell, 2023 WL 1967512, at *9. Moreover, if this report and recommendation is adopted, California Defendants will be liable to Plaintiff for hundreds of thousands of dollars in statutory damages, which will serve the compensation and deterrence purposes of the Lanham Act. Accordingly, this Court respectfully recommends that the District Court find that Plaintiff is not entitled to attorneys' fees under the Lanham Act.

17

### d. Costs

The Lanham Act "allows for the recovery of costs subject to the requirements of 15 U.S.C. § 1114 and the principles of equity." Streamlight, 2019 WL 6733022, at *17. Plaintiff's motion seeks $53,291.50 in attorneys' fees and costs in a combined motion, without separating costs from attorneys' fees. The Court's review of Plaintiff's counsel's invoices identifies the following expenses, separate from attorneys' fees:

Court filing fee: $400, ECF No. 28-2 at ECF page 4;

Attempted process service, $367.09, id. at ECF page 6;

Service of process, $527.63, id. at ECF page 21;

Service of process, $397.63, id. at ECF page 21.

Plaintiff did not provide the supporting documentation for these expenses, but they are within the normal range of expenses for services that were necessarily undertaken in the course of this litigation. The Court therefore respectfully recommends that Plaintiff be awarded $1,692.35 in costs.

### e. Post-Judgment Interest

Pursuant to 28 U.S.C. § 1961,

> [i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . [and] shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

28 U.S.C. § 1961(a). Plaintiff is entitled to and should be awarded post-judgment interest on the money judgment entered in this action. See, e.g., WowWee Group Limited v. Haoqin, No. 17 Civ. 9893 (WHP), 2019 WL 1316106, at *4 (S.D.N.Y. Mar. 22, 2019) (granting post-judgment interest following default by defendants who counterfeited plaintiff's marks and products);

Bumble and Bumble, 2016 WL 658310, at *12 (granting post-judgment interest after plaintiff's success on merits of trademark infringement claim).

## III. CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the District Court (1) grant Plaintiff's motion for statutory damages under the Lanham Act, 15 U.S.C. Sec. 1117(c), in the amount of $50,000 for each of its five marks violated by California Defendants, for a total of $250,000; (2) deny Plaintiff's request for an award of attorneys' fees; (3) grant Plaintiff's request for an award of $1,692.35 in costs; and (4) grant Plaintiff's request for an award of post-judgment interest on the money judgments entered in this action. The Court also respectfully recommends that the claims as to which and defendants against which Plaintiff has failed to timely move for a default judgment be dismissed as to any damages claims or claims for injunctive relief in this action.

## IV. OBJECTIONS

This report and recommendation will be filed electronically. The Court will mail a copy of this report and recommendation to Defendants at: New Sunshine Lighting, Inc., 15344A Valley Blvd., City of Industry, CA 91746; New Sunshine Energy Solutions Inc., 15344A Valley Blvd., City of Industry, CA 91746; New Sunshine Lighting, Inc., 13321 Garden Grove Blvd. North, Garden Grove, CA 92843; and New Sunshine Energy Solutions Inc., 13321 Garden Grove Blvd. North, Garden Grove, CA 92843. The Court will also email a copy of this report and recommendation to Defendants at "order@newsunshine.net."

Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the

District Judge prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (stating that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision") (internal citation & quotations omitted).

Dated: Brooklyn, New York
      March 14, 2023

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge